UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

SCRUGGS FARM NURSERY,              )
WANAMAKER NURSERY, INC., and       )
TIMOTHY WANAMAKER,                 )
                                   )
        *Plaintiffs*,              )
                                   )        Case No: 4:09-cv-79
v.                                 )
                                   )        Judge Mattice
FARMERS CROP INSURANCE             )
ALLIANCE, GREAT AMERICAN           )
INSURANCE COMPANY, FEDERAL         )
CROP INSURANCE CORPORATION,        )
RISK MANAGEMENT AGENCY, and        )
UNITED STATES DEPARTMENT OF        )
AGRICULTURE,                       )
                                   )
        *Defendants*.              )

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss [Court Doc. 17] submitted by Defendants

Farmers Crop Insurance Alliance, Inc. and Great American Insurance Company.

Defendants assert that all claims against them should be dismissed pursuant to Federal

Rule of Civil Procedure 12(b)(6).

For the reasons explained below, Defendants' Motion to Dismiss [Court Doc. 17] will

be **DENIED**.

## I.    STANDARD OF REVIEW

Although Defendants have styled their Motion as a Motion to Dismiss, Plaintiffs

contend that the Fed. R. Civ. P. 12(b)(6) standard is inappropriate because the Motion

speaks directly to the substantive issues in the case. (Court Doc. 26, Pls.' Resp. at 11-12.)

In their Reply, Defendants concede that the Court may treat the Motion as a Motion for

Summary Judgment instead. (Court Doc. 27, Defs.' Reply at 2.) The Court notes that both sides have submitted affidavits and other exhibits in support of their respective positions. When a party asks the Court to consider matters outside of the pleadings, determination as a motion to dismiss is improper. Fed. R. Civ. P. 12(d); *see also Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). Rule 12(d) also states that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the Motion." Because Plaintiffs raised the issue that the Rule 12(b)(6) approach might be inappropriate in their Response, and because Defendants acknowledged the veracity of this statement in their Reply, the Court finds that the parties have had sufficient notice to provide all necessary materials with their briefs. In addition, the Court finds that the documents submitted likely comprise most or all of what is available at this early stage of litigation without the benefit of discovery. Therefore, the Court will convert the Motion to Dismiss to a Motion for Summary Judgment and will apply the standard of review set forth in Federal Rule of Civil Procedure 56.

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or

determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on a motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their Complaint against all Defendants on August 4, 2009. (Court Doc. 1, Compl.) The Complaint alleges that Defendants Farmers Crop Insurance Alliance, Inc. ("Farmers") and Great American Insurance Company ("Great American"), acting through the Federal Crop Insurance Corporation ("FCIC") and the Risk Management Agency ("RMA"), issued a crop insurance policy to Plaintiff Timothy Wanamaker for the benefit of Scruggs Farm Nursery. (*Id.* ¶ 10.) This federally-reinsured Multiple Peril Crop Insurance ("MCPI") policy was meant to cover the 2005 crop year, was applied for on October 5, 2004, and was issued on October 28, 2004. (Court Doc. 26, Pls.' Resp. to Defs.' Mot. to Dismiss at 1-2.) Plaintiff Timothy Wanamaker's application included a Nursery Plant Inventory Value Report, and he provided Price Lists and Catalogs to the Farmers agent, Richard Mackie with Summitville Crop Insurance Agency. (*Id.* at 3.) The application form, Inventory Value Report, price lists, and catalogs appeared to have been received by Farmers on October 28, 2004. (*Id.* at 2.) Thereafter, on the same day, Farmers issued insurance Policy Number 41-801-0002808 ("2808") along with a Schedule

of Coverage and a Schedule of Insurance.[1]  (*Id.* at 4.)

On or about April 29, 2005, the crops and inventory were damaged by a hail storm, and Plaintiffs filed an insurance claim.  (Compl. ¶ 11.)  Adjusters were sent to assess the claim and determined that an indemnity of $1,391,223.00 was owed to Plaintiffs.  (Pls.' Resp. at 5.)  On July 24, 2006, however, Farmers and Great American sent Plaintiffs a letter stating that the insurance policy for the 2005 crop year was recently determined to be invalid.  (*Id.*; Court Doc. 26-11.)  The reason for this determination was that Plaintiffs had not submitted valid nursery catalogs by the appropriate deadline.  (*Id.*)  Attached to the letter were excerpts from the 2005 MPCI Basic Provisions, which apparently governed the policy, to explain Plaintiffs' appeal rights.  (*Id.*)  Due to Defendants' determination that the insurance policy was invalid, Defendants denied Plaintiffs' claim.

Plaintiffs allege that Defendants improperly failed to pay the insurance claim and are liable for damages.  (Compl. ¶¶ 13-15.)  Plaintiffs further assert that after the claim was denied, the parties submitted to arbitration, pursuant to the insurance policy terms, and Plaintiffs may now bring this action for judicial determination of the validity of their damages claim.  (*Id.* ¶¶ 17-20.)

Defendants Farmers and Great American both submitted answers to Plaintiffs' Complaint with Counterclaims on September 21, 2009 and filed the instant Motion to Dismiss on the same day.  (Court Docs. 13, 14, & 17.)  In their Motion, Defendants assert the following grounds for dismissal.  First, Defendant Farmers asserts that Plaintiffs are

---

[1]  Plaintiffs also assert that Farmers issued a second policy to Plaintiff Wanamaker Nursery, Inc. on October 28, 2004, Policy Number 41-801-0002804.  (Pls.' Resp. at 4-5; Court Doc. 26-9.)

barred from retrying their damages claim to this Court because the arbitration was the binding and final decision. (Court Doc. 18, Defs.' Mem. in Supp. of Mot. to Dismiss at 3.) Defendant Farmers contends that there is no basis for a novel review of the decision because Plaintiffs allege no new facts, do not seek review of the arbitration decision and, in Tennessee, collateral estoppel applies to arbitration findings and the arbitration is considered a judgment on the merits. (*Id.*) In the alternative, Defendant Farmers claims that the statute of limitations bars any action on Plaintiffs' claim for damages. (*Id.*)

Defendant Great American moves for dismissal of the claims against it because it claims that it is not a party to the insurance contract between Plaintiffs and Farmers. (*Id.*) Instead, Great American asserts that Farmers is its subsidiary, but the two are separate corporate entities with different states of incorporation, and Great American never had a contract with Plaintiffs. (*Id.* at 3-4.)

Finally, both Defendants move to dismiss claims made by Plaintiff Scruggs Farm Nursery because they contend that this is a trade name, rather than a legal entity which entered into the contract associated with the issuance of the insurance policy. (*Id.* at 4.)

## III.    ANALYSIS

Because Great American argues that all claims against it should be dismissed because it is not a party to this action, the Court will consider this claim first. The Court will next consider the argument as to the claims by Scruggs Farm Nursery. Finally, the Court will consider the two grounds for dismissal asserted by Defendant Farmers.

### A.    Claims Against Great American Insurance Company

Defendant Great American asserts that it is a separate entity from Defendant

Farmers and had no contract with Plaintiffs for the insurance policy in question. (Defs.' Mem. at 19-20.) In the current corporate structure, Farmers is a subsidiary of Great American, which is, in turn, a subsidiary of American Financial Group, Inc. (Court Doc. 15.) According to Great American, Farmers did not become its subsidiary until sometime in 2005, and it is not a successor in interest to any insurance policies issued by Farmers that existed at that time. (Defs.' Mem. at 19.) Farmers contends that based on the provisions and definitions of the insurance policy, Great American was not a party to the contract and cannot be subject to legal action. (*Id.*)

Plaintiffs dispute Great American's contention that it is not a party to this action by referencing various communications between Plaintiffs and Defendants. Specifically, Plaintiffs provide several letters that were issued to Plaintiffs and mailed in Great American envelopes, on Farmers letterhead but copied to officers with Great American, sent directly from Great American on Great American letterhead, or signed by officers with Great American. (Pls.' Resp. at 17-20; Court Docs. 26-11, 26-15, 26-16, 26-17, 26-18, 26-19, & 26-20.) In one instance, Roxann Brixen signed a letter as an employee of Farmers on July 24, 2006, but signed an August 9, 2006 letter as an employee of Great American. (Pls.' Resp. at 20; Court Docs. 26-11 & 26-20.)

The Court finds that the precise involvement of Defendant Great American in the underlying transaction is unknown at this time. Although Defendants claim that Great American was not the insurer of the policy in question, it appears that Great American did play a part–and potentially a significant one–in the finding that Plaintiff's policy was invalid and the corresponding denial of Plaintiffs' insurance claim. Because the parties have not engaged in discovery at this stage of the litigation, it is impossible for the Court to

determine as a matter of law whether Great American is an appropriate party to this lawsuit. Based on the documents before the Court at this time, the Court finds that Great American's involvement is unknown and that a genuine issue of material fact exists as to whether the claims against it should be dismissed. Accordingly, Defendants' Motion to Dismiss all claims against Defendant Great American will be **DENIED**.

### B. Claims by Scruggs Farm Nursery

Defendants assert that Plaintiff Scruggs Farm Nursery lacks standing because it does not appear to be a legal entity and no insurance policy was issued to this Plaintiff. (Defs.' Mem. at 20.) Instead, Defendants claim that Scruggs Farm Nursery merely appears to be a trade name used by Plaintiff Timothy Wanamaker. (*Id.*)

In their Complaint, Plaintiffs asserted that the insurance policy was issued "to and for the benefit of Plaintiff Timothy Wanamaker and to and for the benefit of Plaintiff Scruggs Farm Nursery, by and through its authorized agent for obtaining such insurance, Plaintiff Timothy Wanamaker" and that the policy insured the "crops, products, farm and nursery materials and inventory" of Scruggs Farm Nursery. (Compl. ¶ 10.)

Plaintiffs contend in their Response to Defendants' Motion that Scruggs Farm Nursery is a proper party because Policy Number 41-801-002804 was issued to Wanamaker Nursery, Inc. on October 28, 2004 and that the MPCI provisions provide that coverage can extend to a partnership or joint venture. (Pls.' Resp. at 26.) Plaintiffs allege that the relationship between Wanamaker Nursery, Inc. and Scruggs Farm Nursery would qualify under this provision, and that more discovery is necessary to determine if Scruggs Farm Nursery or the crops at this nursery ever appeared or were listed on any of the policy

documents.  (*Id.*)

The Court has reviewed the documents before it and cannot determine whether the insurance policies at issue have any application to Scruggs Farm Nursery.  The Court notes, however, that this case is at a very early stage of litigation without the benefit of much discovery, and the Court does not have sufficient information at this time concerning the relationships between the various Plaintiffs, agency or otherwise.  The Court finds that additional discovery, the exchange of information and documents, and the clarification of relationships might substantiate claims by Plaintiff Scruggs Farm Nursery, and it would be premature to dismiss this entity at this time.  The Court concludes that a genuine issue of material fact exists as to the validity of claims by this party and that Defendants' Motion to Dismiss Scruggs Farm Nursery as a party to this lawsuit should be **DENIED**.

### C.  Farmers Crop Insurance Alliance, Inc. Arguments

Defendant Farmers asserts two arguments, both of which attack Plaintiffs' basic ability to bring this lawsuit.  Because these arguments are essentially intertwined, the Court will address them together.

Defendant Farmers first asserts that the arbitration conducted in this matter prohibits Plaintiffs from re-litigating the issues before this Court.  (Defs.' Mem. at 10.)  More specifically, Farmers contends that the Federal Arbitration Act ("FAA") limits the standard of review for arbitration awards, and claims cannot be retried anew at this Court unless Plaintiffs have a basis for requesting vacation or modification of the arbitration award.  (*Id.* at 10-11.)  Essentially, Farmers argues that collateral estoppel bars Plaintiffs from challenging the arbitration award and adjudicating the same claims a second time.  (*Id.*)

Plaintiffs claim that the insurance policy provisions allow for the filing of this litigation after the arbitration. (Pls.' Resp. at 21.) Plaintiffs point to Paragraph 20(b)(3) and Paragraph 20(c) of the insurance policy as permitting judicial action if arbitration is complete and making the arbitration decision binding only when judicial review is not sought. (*Id.* at 22.) Plaintiffs contend that the insurance policy terms control and because the provisions are controlling, judicial review of the arbitration decision is permitted. (*Id.* at 23.)

The determinations the Court must make in order to resolve this issue are twofold. First, the Court must determine whether collateral estoppel bars the instant case due to the prior disposition of these issues in arbitration. If the Court finds that collateral estoppel does not apply and that the binding determinations in the arbitration award do not prohibit this action, the Court must then determine whether the insurance policy provisions allow for judicial review by this Court.

The Court will address collateral estoppel and the arbitration first. The arbitration is styled Timothy Wanamaker v. Farmers Crop Insurance Alliance and Great American Insurance Company. (Court Doc. 18-4.) The Award states, in relevant part:

> In this dispute over crop insurance, the policy limits the role of the arbitrators to resolving "any factual determination" made by the insurer. Though the insurer's initial basis for denying coverage related to the catalog submitted with the insurance application, the insurer has learned as a result of the arbitration additional grounds for denying coverage. One is that the Claimant did not have an insurable interest in the nursery crop that was damaged by a storm in April 2005.
>
> . . .
>
> The Claimant has not established that he had an insurable share or interest in the crop that was damaged. He has a

deed that shows that he owns the land where the crop was planted. Other than that, he does not have any documentation that he had an insurable share in the crop. He has no records of any expenses for growing nursery crop on the land, nor does he have any records of any sales from crops grown on the land.

He did not report any loss or income from the nursery operation on his 2004 and 2005 federal income tax returns. He was during those years paid an annual wage by Wanamaker Nursery, Inc., a family-owned corporation in which he is a shareholder. The only catalog he can produce is one from the corporation.

The Claimant testified about his relationship with an entity known as "Tennessee Bush Farm." The precise nature of that relationship is unclear. The Claimant has no records that document his relationship with that entity. Apparently, Tennessee Bush Farm also claims an interest in the crop as well, for according to Claimant, it sold stock from the Claimant's land.

Because the Claimant has not established an insurable share in the crop, the policy is voided. Having made this factual determination, it is not necessary to make any additional factual determinations.

(Court Doc. 18-4 at 4-5.) Defendants assert that this award bars Plaintiffs from relitigating the same facts because collateral estoppel applies to make arbitration awards binding.

Because jurisdiction as to these two Defendants is based on diversity of citizenship, Tennessee law applies. "Under Tennessee law . . . the doctrine of 'collateral estoppel' operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit." *Smith v. Dawson-Smith*, 111 F. App'x 360, 362 (6th Cir. 2004) (citing *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995)). The purpose of collateral estoppel is "to conserve judicial resources, to relieve litigants from the cost and vexation

of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions." *Beaty v. McGraw*, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998).

The Court must consider four factors when determining whether collateral estoppel applies to this case: (1) whether the issues in the prior proceeding were the same as those raised in the present action; (2) whether the prior proceeding resulted in judgment on the merits; (3) whether the party in the present action was a party or in privity with a party to the prior action; and (4) whether there was full and fair opportunity to litigate the issue in the prior proceeding. *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563 (Tenn. Ct. App. 1991). In Tennessee, findings made by an arbitrator have the same binding effect as judicial determinations made by a court. *Turpin v. Love*, 1973 WL 16997, at *4 (Tenn. Ct. App. Aug. 14, 1973); *see also Bright v. Spaghetti Warehouse, Inc.*, 1998 WL 205757 (Tenn. Ct. App. Apr. 29, 1998) (applying collateral estoppel when underlying action was resolved at arbitration).

The issues raised through arbitration were basically the same as the issues raised in this action. On the Demand for Arbitration form, Plaintiff Timothy Wanamaker wrote, "I submitted my nursery whosale [sic] catalog to my crop insurance agent. My agent in turn substituted my catalog for a generic price list that he had fabricated. The company & RMA accepted this and sent me a schedule of insurance. I suffered a loss & submitted a claim and it was worked by the adjuster & when it was ready to be signed the insurance company sent me notification that my policy was deemed void due to the generic price list of which there was many." (Court Doc. 18-4 at 2.) This statement essentially comprises the same issues raised in the instant case. In addition, the arbitration award can be considered a judgment on the merits.

The reason that the doctrine of collateral estoppel fails to bar this action, however, lies in the last two factors. The arbitration involved only individual Plaintiff Timothy Wanamaker, while this action also involves the corporation Wanamaker Nursery, Inc. and Scruggs Farm Nursery, an entity of unknown origin and status.[2] The Court recognizes that the crops at issue in policy 2808 may have been crops at or held by Plaintiffs Wanamaker Nursery, Inc. or Scruggs Farm Nursery, and that these entities may have had an interest in the outcome of the arbitration which only concerned Plaintiff Timothy Wanamaker. In addition, although there would likely be privity flowing from the corporation to the individual agent if the corporation was bound by the arbitration award, the Court is not certain if privity between Plaintiff Timothy Wanamaker and Plaintiffs Wanamaker Nursery, Inc. or Scruggs Farm Nursery would be present under the circumstances of this case, where only Plaintiff Timothy Wanamaker was involved in the arbitration. For that matter, the Court is not clear as to whether any agency relationship even exists between Timothy Wanamaker and Wanamaker Nursery, Inc. or Scruggs Farm Nursery. The difference in parties and the potential implications of that difference make this factor weigh heavily against the application of collateral estoppel to the instant case.

---

[2] There is some confusion regarding the fact that Plaintiff Timothy Wanamaker was issued the insurance policy ending in 2808, while there is also a document before the Court indicating that an insurance policy ending in the numbers 2804 was issued to Wanamaker Nursery on the same date, October 28, 2004. (Court Doc. 26-9.) Defendants assert that any claims under this policy are invalid as it was never submitted to arbitration and it is well past the statute of limitations. (Defs.' Reply at 6-7.) Although the Court recognizes a dispute over whether the 2004 or 2005 policy provisions apply, to be discussed *infra*, the Court notes that Plaintiffs have produced no evidence that a claim for policy 2804 was ever filed, denied, or submitted to arbitration. Submitting a denied claim to arbitration would be a required step under either year of the policy provisions, assuming that policy 2804 was never declared by Defendants to be invalid. The Court has no other information about this policy, but if Defendants did not determine that policy 2804 was invalid, the Court agrees with Defendants that any action based on that policy is well beyond the statute of limitations.

Moreover, the Court cannot simply accept that the arbitration was a full and fair opportunity to litigate the issues. The Court lacks information about what documents or materials were provided to the arbitrator, but it appears that the arbitrator reviewed a limited universe of information to make the ultimate determination. From the meager information available to the Court at this time, the arbitrator may have assessed evidence only to determine Plaintiff Timothy Wanamaker's insurable share in the crops. Although other issues were raised–such as the voiding of the policy for invalid nursery catalogs–the arbitrator did not reach these issues and only made one factual determination. In fact, the arbitrator specifically noted that "it was not necessary to make any additional factual determinations" on the other issues presented. (Court Doc. 18-4 at 5.) This factor also weighs heavily against the application of collateral estoppel.

Based on the limited information available to the Court, the Court cannot accept that collateral estoppel applies to bar Plaintiffs' entire action. The Court recognizes, however, that this determination does not necessarily render the arbitration award moot and non-binding. Rather, the factual findings by the arbitrator may indeed still be binding on the parties to the arbitration, Plaintiff Timothy Wanamaker and Defendants Farmers and Great American. It is only the arbitrator's specific findings that would be binding on this Court; therefore, the only determination that might be binding would be the finding that the insurance policy is invalid because Plaintiff Timothy Wanamaker had no insurable interest in the crops.[3] Based on the Court's analysis of Defendants' argument regarding which

---

[3]     The Court would note that there may be reasonable grounds for Plaintiffs to move for vacation of the arbitration award, although Plaintiffs to date have not made such an application. The FAA states that arbitration awards can be vacated for the following reasons:

version of the insurance policy applies, however, the Court cannot even make the determination that the arbitration would be binding under the circumstances of this case.[4]

Nonetheless, even if the arbitration award is binding in its one narrow determination,

---

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). After reviewing the meager evidence available at this time, the Court finds that the arbitrator or arbitrators in this case may have exceeded their powers, which could render the award subject to vacation under 9 U.S.C. § 10(a)(4).

It appears to the Court that the arbitrators failed to address the issues presented and instead decided the award solely based on another theory–advanced by Defendants–which appears to have been advanced only after the arbitration was initiated. Defendants' argument was outside the scope of the issues presented for review by the arbitrator because, as the arbitrator noted, it was not raised until after the commencement of the arbitration process. The Court has no information about the opportunity that Plaintiffs had to gather and present evidence concerning this newly raised argument. Moreover, the arbitrator made the decision based solely on this newly advanced argument without reaching any of the issues and arguments actually submitted to the arbitration panel by Plaintiff Timothy Wanamaker. The Court would also note that this deference to Defendants' subsequently raised argument may suggest grounds for vacation based on the refusal of the arbitrators to hear pertinent and material evidence or may indicate other misbehavior that prejudiced Plaintiffs. *See* 9 U.S.C. § 10(a)(3).

The Court does not have an application for vacation before it and does not have sufficient information to make any determination, at this time, that the arbitration award can indeed be vacated. The Court merely notes, without deciding, that vacation on these grounds is a theoretical possibility.

[4] The Court addresses this argument *infra*, but the 2005 Policy specifically provides that arbitration is binding "*unless* judicial review is sought" and that "you and we have the right to judicial review of any decision rendered in arbitration." (2005 Policy at 24.) (emphasis added). Therefore, if the 2005 Policy applied, the commencement of judicial review would appear to render the arbitration award non-binding and the Court's review would be *de novo*.

the Court finds that there are many unanswered questions and issues that still exist as to this insurance policy and whether Plaintiffs are entitled to coverage. The Court does not understand why Plaintiff Timothy Wanamaker would be issued an insurance policy immediately after receipt of the application and nursery catalogs, but never notified that the policy was invalid–for any of the reasons stated by Defendants–until many months after submission of the insurance claim and nearly two years after the policy was issued (and had long since expired for the 2005 crop year).

The Court has no information before it on the requirements to substantiate a crop insurance application, the procedure upon submission of the application materials, or the procedure for reviewing the submission for validity, but it appears that these procedures, if they exist, were not appropriately followed by Defendants. The Court notes that Plaintiffs have asserted a bad faith claim pursuant to Tennessee law, and the Court finds that there are many unresolved issues that might substantiate this claim, or a claim of estoppel based on reliance on what appeared to Plaintiffs to be a valid policy–regardless of Defendants' contentions that the policy was invalid or the binding determination by the arbitrator that the policy was invalid due to Plaintiff Timothy Wanamaker's insurable interest in the crops.

Under the circumstances, the Court finds that collateral estoppel would not bar Plaintiffs' action in this Court. Furthermore, the Court finds that, in the event that the one factual determination in the arbitration award is binding, there are determinations that this Court could make on several other issues not addressed or resolved during arbitration.

The Court must now assess whether Plaintiffs had the right to bring the instant lawsuit under the statute of limitations contained in the applicable policy provisions. Again, the Court notes the irony that Defendants assert the statute of limitations in the policy

provisions as a defense after informing Plaintiffs that the policy was always invalid. Nonetheless, as the Court stated above, if Plaintiffs are correct that the policy was valid, the policy provisions would certainly apply.[5]

The determination of this issue depends in part on what version of the insurance policy controls. Defendants take the position that the forms marked 2004-NCIS 700B ("2004 Policy") apply to this case. (Court Doc. 18-2.) Plaintiffs contend that the forms marked 2005-NCIS 700B ("2005 Policy") control and have provided this document as an exhibit. (Court Doc. 26-12, 2005 Policy.) There is a significant difference in the language of section 20 of each policy, which contains information about appeals. In the 2004 Policy, section 20 is titled "Arbitration, Appeals, and Administrative Review" and reads as follows:

> (a) If you and we fail to agree on any factual determination made by us, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Disputes regarding the amount of assigned production for uninsured causes for your failure to use good farming practices must be resolved under this subsection.
>
> (b) Except as provided in section 20(d), you may appeal any determination made by FCIC in accordance with appeal provisions published at 7 CFR part 400, subpart J or 7 CFR part 11.
>
> (c) No award determined by arbitration, appeal, administrative review or reconsideration process can exceed the amount of liability established or which should have been established under the policy.
>
> (d) If you do not agree with any determination made by us or FCIC regarding whether you have used a good farming practice, you may request reconsideration of this determination

---

[5] Of course, if the policy was valid, the Court would probably not have to address these issues in any event because, presumably, if the policy were valid, Defendants would not have denied Plaintiff's claim, and there would be no need to contest the failure to provide coverage.

in accordance with the review process established for this purpose and published at 7 CFR part 400, subpart J. However, you must complete the reconsideration process before filing suit against FCIC in the United States district court. You cannot sue us for determinations of good farming practices.

(Court Doc. 18-2 at 25.)[6] Also at issue in the 2004 Policy provisions is section 25, which is titled "Legal Action Against Us" and reads:

(a) You may not bring legal action against us unless you have complied with all of the policy provisions.

(b) If you do take legal action against us, you must do so within 12 months of the date of denial of the claim. Suit must be brought in accordance with the provisions of 7 U.S.C. 1508(j).

(c) Your right to recover damages (compensatory, punitive, or other), attorney's fees, or other charges is limited or excluded by this contract or by Federal Regulations.

(*Id.* at 26.)

In contrast, section 20 of the 2005 Policy is titled "Mediation, Arbitration, Reconsideration, and Administrative and Judicial Review" and includes a great deal more information.[7] (2005 Policy at 24-25.) Essentially, the difference is this: with the 2004

---

[6] Because Court Document 18-2 contains several separate documents, citations to this document will be the page number of the document as a whole, rather than citations to the individual page numbers of various documents (in this case, the 2004 Policy).

[7] For the sake of conservation of paper, the Court will reproduce the many relevant portions of this lengthy section in this footnote:

(a) If you and we fail to agree on any determination made by us except those specified in section 20(d), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.

(1) All disputes involving determinations made by us, except those specified in

-18-

section 20(d), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

(i) Any interpretation by FCIC will be binding in any mediation or arbitration.

(ii) Failure to obtain any required interpretation from FCIC will result in the nullification of any agreement or award.

(iii) An interpretation by FCIC of a policy provision is considered a rule of general applicability and is not appealable. If you disagree with an interpretation of a policy provision by FCIC, you must obtain a Director's review from the National Appeals Division in accordance with 7 CFR 11.6 before obtaining judicial review in accordance with subsection (e).
(iv) An interpretation by FCIC of a procedure may be appealed to the National Appeals Division in accordance with 7 CFR part 11.

(2) Unless the dispute is resolved through mediation, the arbitrator must provide to you and us a written statement describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and breakdown by claim for any award. The statement must also include any amounts awarded for interest. Failure of the arbitrator to provide such written statement will result in the nullification of all determinations of the arbitrator. All agreements reached through settlement, including those resulting from mediation, must be in writing and contain at a minimum a statement of the issues in dispute and the amount of the settlement.

(b) Regardless of whether mediation is elected:

(1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

(2) If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review;

(3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered; and

(4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

Policy, claimants appealing unfavorable decisions must file suit in district court within a year of the claim denial;[8] with the 2005 Policy, claimants generally have a year after the

---

(c) Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3). Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration.

(d) If you do not agree with any determination made by us or FCIC regarding whether you have used a good farming practice (excluding determinations by us of the amount of assigned production for uninsured causes for your failure to use good farming practices), you may request reconsideration by FCIC of this determination in accordance with the reconsideration process established for this purpose and published at 7 CFR part 400, subpart J (reconsideration). To resolve disputes regarding determinations of the amount of assigned production, you must use the arbitration or mediation process contained in this section.

(1) You must complete reconsideration before filing suit against FCIC and any such suit must be brought in the United States district court for the district in which the insured farm is located.

(2) Suit must be filed not later than one year after the date of the decision rendered in the reconsideration.

(3) You cannot sue us for determinations of whether good farming practices were used by you.

(e) Except as provided in section 20(d), if you disagree with any other determination made by FCIC, you may obtain an administrative review in accordance with 7 CFR part 400, subpart J (administrative review) or appeal in accordance with 7 CFR part 11 (appeal). If you elect to bring suit after completion of any appeal, such suit must be filed against FCIC not later than one year after the date of the decision rendered in such appeal. Under no circumstances can you recover any attorney fees or other expenses, or any punitive, compensatory or any other damages from FCIC.

(f) In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this policy and any state or local laws will be resolved in accordance with section 31. If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

. . .

[8] Even this point is debatable. Defendants argue that the statute of limitations embodied in the 2004 MPCI basic provisions, ¶25(b), requires suit within a year of the date of denial of the claim. (Defs.' Mem. at 15-16). Plaintiffs, however, point out that the very RMA determinations cited by Defendants militate against this reading: "even Farmers and Great American acknowledge that 'legal action' is a broader term than 'filing suit' and that taking legal action is satisfied by filing either 'suit and/or arbitration.' (Pls.' Resp. at 17; Court Doc. 18-4, Aff. of Counsel, Ex. 3, USDA RMA's Final Agency Determination FAD-

appeal procedures–mediation, arbitration, reconsideration, etc.–are complete, which would occur well after the claim denial. Moreover, in the 2005 Policy, Paragraph 20(c) specifically states that arbitration is binding "*unless* judicial review is sought" and that "you and we have the right to judicial review of any decision rendered in arbitration." (2005 Policy at 24.) (emphasis added). This language has the potential to significantly undercut Defendants' arguments regarding the binding effect of the arbitration award in this case.

Defendants claim that the 2004 Policy applies to the instant case because the RMA declared that the 2004 version of the MPCI Basic Provisions would apply to nursery crops and determined that the "contract change date" for application of the 2005 Basic Provisions would be August 30, 2004. (Court Doc. 27, Defs.' Reply at 3; *see also* Group Risk Plan of Insurance Regulations for the 2004 and Succeeding Crop Years; and the Common Crop Insurance Regulations, Basic Provisions, 69 Fed. Reg. 48,652 (Aug. 30, 2004).) Defendants state that the contract change date for nursery policies in crop year 2005 was June 30, 2004. (*Id.*) Because this date was prior to August 30, 2004, and the 2005 Basic Provisions would only apply to policies with dates after August 30, 2004, the 2004 Policy applies. (*Id.* at 3-4.) Defendants assert that "[t]he sales closing date for nursery policies in crop year 2005 was May 31, 2005, so the immediately-preceding contract change date for crop year 2005 was June 30 of the prior year (2004). Since the contract change date for 2005 nursery policies (June 30, 2004) preceded the effective date of the 2005 MPCI Basic Provisions (August 30, 2004), the 2004 version of the terms still applied to nursery policies such as Plaintiff Timothy Wanamaker's." (*Id.* at 4.)

---

013, which provides that "legal action encompasses both litigation and arbitration.")

Frankly, the Court does not understand the precise relationship between all of these dates, and the Court is not sure that Defendants did either, particularly when they communicated with Plaintiffs regarding the policy. Nonetheless, Defendants assert that because the 2004 Policy applies, the statute of limitations has passed for judicial review because the denial of Plaintiffs' claim (or rather, the invalidation of Plaintiffs' policy) occurred on July, 24 2006 and Plaintiff did not file suit until August 4, 2009. Plaintiffs assert that the correct statute of limitations is outlined in the 2005 Policy provisions and that suit was properly filed within one year after the Arbitration Award was made on August 5, 2008.

The Court finds that the more relevant issue is whether Plaintiffs were aware of the policy provisions that applied and were aware of what Defendants now contend was the accurate statute of limitations. As it stands, the Court does not have any information as to what policy provisions were sent to Plaintiffs, if any, when the policy was issued. The information before the Court, however, does show that if Defendants are correct and the 2004 Policy applies, Plaintiffs were egregiously misinformed of the process for appealing the determination that the policy was invalid, and that Defendants–at least initially, and likely multiple times–incorrectly sent Plaintiffs the 2005 Policy documents to outline the appeal rights.

On July 24, 2006, Plaintiff Timothy Wanamaker received a letter from Defendant Farmers stating that the policy 2808 was found to be invalid because "[v]alid Nursery catalogs were not submitted by the appropriate deadline." (Court Doc. 26-11.) Attached to this letter was section 20 of the 2005 Policy, and the letter indicated that the attachment would explain the rights to appeal the decision. (*Id.*) On July 26, 2006, another letter from

Farmers again outlined Plaintiff's appeal rights through mediation, administrative review by RMA, or an appeal to the National Appeals Board ("NAD"). (Court Doc. 26-15.) These statements again appear to reference information from the 2005 Policy. On August 18, 2006, Plaintiff received a letter informing him that the previous letters were incorrect regarding his NAD appeal and that he was required to complete an administrative review first. (Court Doc. 26-16.)

On November 15, 2006, Plaintiff received another letter, this time from Great American, again stating that he had been incorrectly informed about the steps to take for an appeal. (Court Doc. 26-17.) The attachment referenced in the letter is not included in the record, but the letter states that section 20 of the applicable provisions is attached to "explain your rights of mediation or arbitration." (*Id.*) Because the 2004 MPCI Basic Provisions did not provide any information about mediation and because the page numbers referenced in the letter coincide with the page numbers where section 20 can be found in the 2005 Policy, the Court finds it more likely that sections of the 2005 Policy were attached to this letter.

After reviewing this haphazard and disorganized correspondence, the Court cannot accept that Plaintiffs had any accurate idea of the statute of limitations that would apply to this case. It may very well be that the 2004 MPCI Basic Provisions are actually those meant to apply to the nursery insurance policy at issue, but in order for those terms to apply to *any* insurance policy when a claimant is attempting to perfect an appeal, the claimant needs to be informed of the appropriate provisions. Here, Plaintiffs seem to have been given incorrect information over a period of months which consistently referenced the 2005 Policy provisions. If that was in error and the 2004 Policy actually applied, that error

is entirely attributable to Defendants Farmers and Great American.

Defendants also take the position that because the 2004 Policy provisions were jointly submitted to the arbitrator, this Court should view this submission as binding the parties to those provisions. The Court is not inclined to do so for the same reasons the Court has previously stated regarding its concerns as to the validity of the arbitration award to this lawsuit. In addition, the arbitrator made no comment or determination on the issue of what policy provisions applied, so the fact that the parties submitted the 2004 Policy documents to arbitration does not bind the Court to accept that these provisions apply.

Based on the information available to the Court at this time, Plaintiffs were likely completely misinformed of their appeal rights and may have never been provided with what Defendants now claim is the accurate statute of limitations. A plaintiff can hardly be expected to comply with one set of provisions when he was continuously told to comply with a different set of provisions in order to perfect his appeal. Accordingly, the Court rejects Defendants' arguments regarding the statute of limitations as it is outlined in the 2004 Policy. Because Plaintiffs were consistently told to comply with the appeal provisions in the 2005 Policy documents, the Court finds that Plaintiffs appropriately filed this suit for judicial review within one year of the arbitration award, as provided in the 2005 Policy.

The Court therefore rejects both of Defendant Farmers' arguments in regards to the application of collateral estoppel based on the arbitration award and the statute of limitations contained in the 2004 Policy documents.

The Court would note once more that many of its determinations at this time are due to lack of information; simply put, the Court is at a loss to understand much of what transpired with this insurance policy, the determination that it was invalid, the confusing

aftermath of communication between Defendants and Plaintiffs, and the arbitration. As a result, the Court finds that Defendants' Motion is premature at this juncture. At the summary judgment stage, the Court must consider the evidence in the light most favorable to the Plaintiffs, and the Court finds that Plaintiffs have raised several genuine issues of material fact that cannot be resolved at this early stage of litigation. The Court anticipates that some of these issues might be resolved with more extensive discovery; however, based on the dearth of information available at this time, the Court concludes that there is insufficient evidence warranting the dismissal of Plaintiffs' claims against Defendant Farmers based on the arbitration award and the statute of limitations. Accordingly, Defendants' Motion to Dismiss on these issues is **DENIED**.

## IV. CONCLUSION

For the reasons outlined above, the Court **ORDERS** that the Motion to Dismiss [Court Doc. 17] submitted by Defendant Farmers Crop Insurance Alliance, Inc. and Defendant Great American Insurance Company is **DENIED** in its entirety.

**SO ORDERED** this 21st day of September, 2010.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE