UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

SCRUGGS FARM NURSERY, *et al.*,       )
                                      )
            Plaintiffs,               )
                                      )        4:09-cv-79
v.                                    )        *Lee*
                                      )
FARMERS CROP INSURANCE                )
ALLIANCE, INC., *et al.,*             )
                                      )
            Defendants.               )

## MEMORANDUM AND ORDER

Before the Court are three motions for summary judgment: one filed by Defendants Farmers

Crop Insurance Alliance, Inc. ("Farmers Crop Insurance") and Great American Insurance Company

("Great American") (collectively "Defendants") [Doc. 80], one filed separately by Great American

[Doc. 85], and one filed by Plaintiffs Scruggs Farm Nursery ("Scruggs Farm"), Wanamaker Nursery,

Inc.,[1] and Timothy Wanamaker, individually and doing business as Scruggs Farm Nursery

("Timothy") [Doc. 79]. For the reasons explained below, the Court will **GRANT** Defendants'

motion for summary judgment [Doc. 80], will **DENY** Plaintiffs' motion for summary judgment

[Doc. 79], and will **DENY AS MOOT** Great American's separate motion for summary judgment

[Doc. 85].

## I.    BACKGROUND

### A.    Complaint Allegations and Procedural Posture

Plaintiffs allege Defendants issued a crop insurance policy to Timothy for the benefit of

---

[1]  The parties have stipulated that Plaintiff Wanamaker Nursery, Inc. did not give notice of any insurance claim under its Farmers Crop Insurance policy for the 2005 crop year [Doc. 78 at PageID#: 637].

Scruggs Farm for the 2005 crop year [Doc. 1 at PageID#: 7].[2]  On or about April 29, 2005, a hail storm damaged the crop on Scruggs Farm, and Timothy submitted an insurance claim for the loss pursuant to a crop insurance policy that provided coverage for this type of event [*id.*].  Defendants denied Timothy's claim and the claim was then submitted to arbitration [*id.* at PageID#: 9].  An arbitration award, which was issued on August 6, 2008, upheld Defendants' denial of Timothy's insurance claim [*id.*].  Plaintiffs allege that Defendants failed to properly pay the insurance claim and are liable for breach of contract and bad faith refusal to pay pursuant to Tennessee state law [*id.* at PageID#: 8-9].  Plaintiffs also assert Defendants acted with fraud and malice in denying the insurance claim because Defendants failed to comply with the terms of the insurance policy and the applicable procedures [*id.* at PageID#: 10].[3]

## B.    Undisputed Facts

The Court held oral argument on all of the above-referenced motions for summary judgment on March 20, 2012.  At the oral argument, the parties agreed that there are no facts in dispute relating to their respective summary judgment motions.  A brief summary of the relevant undisputed facts follows.[4]

---

[2]  Plaintiffs also filed suit against Defendants Federal Crop Insurance Corporation ("FCIC"), Risk Management Agency ("RMA") and the United States Department of Agriculture ("USDA"), but these federal agencies were previously dismissed by the Court [Doc. 45] prior to the parties' consent to the magistrate judge.

[3]  Plaintiffs also filed a separate case, Civil Case No. 4:09-cv-97, asserting state law claims against the insurance agency and agents who worked with the Wanamaker family during this time period on all of their crop insurance needs and who assisted Timothy in the relevant insurance application process.  That case was recently remanded to state court due to the Court's lack of subject matter jurisdiction [4:09-cv-97, Doc. 36].

[4]  With respect to Plaintiffs' claims against Great American, Plaintiffs agreed that if their claims against Farmers Crop Insurance were to be dismissed, then their claims against Great American would not survive.

2

Timothy became the purported owner of the inventory at Scruggs Farm in October 1997, when the land known as Scruggs Farm was deeded to him by Tennessee Bush Farm, Inc. [Doc. 82 at PageID#: 804-05; Doc. 78 at PageID#: 635-36]. Tennessee Bush Farm, Inc. is a nursery business owned and operated by Timothy's brother, Steve Wanamaker [Doc. 82 at PageID#: 805]. Timothy and Steve's father, William Wanamaker, owns and operates a nursery business called Wanamaker Nursery, Inc., a Plaintiff to this lawsuit [*id.*]. After the Scruggs Farm land was deeded to Timothy, Timothy and Steve both operated the farm together until 2002, when Steve left the business and Timothy became the sole operator [*id.* at PageID#: 806]. After Timothy took over the operation, he allowed Wanamaker Nursery, Inc. and Tennessee Bush Farm, Inc. to come to Scruggs Farm and dig nursery crops off that land for resale to their own customers [*id.*; Doc. 78 at PageID#: 634-35]. In exchange for the nursery crops from Scruggs Farm, Wanamaker Nursery, Inc. and Tennessee Bush Farm, Inc. gave Timothy credit toward any obligation Timothy owed to those entities, or gave Timothy something in trade, such as supplying labor or paying for supplies used at Scruggs Farm [*id.*]. There is no written documentation memorializing this agreement, which continued until the hail storm of April 2005 [Doc. 78 at PageID#: 634-35, 637].

While Timothy was allowing Wanamaker Nursery, Inc. and Tennessee Bush Farm, Inc. to take nursery crops from Scruggs Farm land, he did not sell nursery crops from Scruggs Farm to any third party [*id.* at 636]. Wanamaker Nursery, Inc. paid Timothy an hourly wage for his work at Scruggs Farm and furnished labor for the farm, and Tennessee Bush Farm, Inc. provided equipment and fuel for the operation of Scruggs Farm [*id.*]. Although Timothy has paid the taxes on the Scruggs Farm property since 2002, he did not report any income or loss from any Scruggs Farm nursery business on his tax return for 2004 or 2005 [Doc. 78 at PageID#: 636-37; Doc. 82 at

3

As part of Timothy's ownership of the Scruggs Farm land and nursery crops on that land, he sought to secure crop insurance for the 2005 crop year and submitted an application to Farmers Crop Insurance through agent Richard Mackie on October 5, 2004 [Doc. 78 at PageID#: 628; Doc. 82 at PageID#: 807]. Timothy also submitted a Plant Inventory Value Report ("PIVR") for Scruggs Farm and a Crop Inventory Valuation Estimate [*id.*]. Mr. Mackie asked Timothy for nursery catalogs to submit with his application, and Timothy left two copies of a catalog/price list for Mr. Mackie to pick up for submission [Doc. 78 at PageID#: 633; Doc. 82 at PageID#: 807].

On October 28, 2004, Farmers Crop Insurance issued a Schedule of Coverage for policy No. 41-801-0002808 to Timothy and subsequently sent inspector Jeffrey Lawson to inspect Scruggs Farm [Doc. 82 at PageID#: 808; Doc. 78 at PageID#: 631, 633]. Mr. Lawson submitted a report signed November 13, 2004, which recommended acceptance of Timothy's application [*id.*]. Farmers Crop Insurance thereafter accepted the application and issued a Schedule of Insurance to Timothy [Doc. 82 at PageID#: 808; Doc. 78 at PageID#: 633-34].

After the hail storm in April 2005, Timothy submitted a claim to Farmers Crop Insurance [Doc. 82 at PageID#: 809; Doc. 78 at PageID#: 637]. Farmers Crop Insurance adjusted the claim and calculated the indemnity owed would be $1,391,223.00 [Doc. 82 at PageID#: 809; Doc. 78 at PageID#: 642-43]. In July 2005, however, the RMA directed Farmers Crop Insurance to review several nursery crop insurance policies in Tennessee to determine whether the policies had acceptable catalogs [Doc. 82 at PageID#: 809-10; Doc. 78 at PageID#: 637]. As part of this review, Farmers Crop Insurance determined Timothy had not provided a proper nursery catalog with his application and subsequently denied his insurance claim [Doc. 82 at PageID#: 810; Doc. 78 at

PageID#: 640]. Farmers Crop Insurance first notified Timothy of its decision by letter of July 24, 2006, and the letter stated that valid nursery catalogs had not been submitted by the appropriate deadline and that a correct catalog had not been submitted to the insurance agent [*id.*; Doc. 82-21 at PageID#: 956]. A subsequent letter sent to Timothy by Farmers Crop Insurance on July 26, 2006 recounted a conversation about the catalog issue, noted that Farmers Crop Insurance had determined coverage would be declined because of the generic catalog submitted, and informed Timothy of his appeal rights [Doc. 78 at PageID#: 640-41; Doc. 82-22 at PageID#: 958-59]. A third letter dated August 9, 2006 informed Timothy that he could put the crop to another use because Farmers Crop Insurance was "rejecting your policy in whole" [Doc. 82 at PageID#: 811; Doc. 82-23 at PageID#: 961].[5]

Timothy filed a demand for arbitration on December 20, 2006 [Doc. 78 at PageID#: 643]. A three-day arbitration hearing, combined with other arbitration proceedings involving Travis Wanamaker, was held June 18-20, 2008 [Doc. 78 at PageID#: 644]. Timothy was not represented by an attorney during the arbitration [*id.*; Doc. 84 at PageID#: 1093]. On August 5 or 6, 2008, the arbitrators issued an award upholding the voidance of Timothy's policy because Timothy had not established an insurable interest in the damaged Scruggs Farm crop [Doc. 82-25 at PageID#: 968-75]. Plaintiffs filed the instant case on August 4, 2009 [Doc. 1].

---

[5] Communication between Farmers Crop Insurance and Timothy became confusing. A fourth letter dated August 18, 2006 indicated Timothy had been misinformed with respect to his appeal rights and sought to correct the misinformation [Doc. 26-16 at PageID#: 342]. A fifth letter, dated November 15, 2006, again sought to correct misinformation previously provided to Timothy about the proper method to perfect an appeal [Doc. 26-17 at PageID#: 344].

## II.    STANDARD OF REVIEW

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The applicable substantive law provides the frame of reference to determine which facts are material.  *Anderson*, 477 U.S. at 248.  A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party.  *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute.  *Id.* at 249.  Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907.  A mere scintilla of evidence is not enough to survive a motion for summary judgment.  *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. James*, No. 7:09-CV-98 (HL), 2011 WL 837179, at *1 (M.D. Ga. Feb. 2, 2011).  The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c).  If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute.  *Id.*  In reply, the movant may then

attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* Either party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

## III.    ANALYSIS

### A.    Defendants' Motion

Defendants argue that collateral estoppel bars Plaintiffs from relitigating the claims heard and decided during arbitration because the arbitration was a full and fair opportunity to litigate on the merits, complete with discovery and a three-day hearing in accordance with the rules of the American Arbitration Association, and Timothy was a party to the arbitration [Doc. 81 at PageID#: 789-93].[6] Defendants contend that although they did not raise the insurable interest issue when they initially denied Timothy's claim, Timothy was alerted to this argument during the arbitration

---

[6] Defendants assert several other arguments, supported by affidavits and exhibits, in their motion.  For example, Defendants invoke a confusing and sometimes contradictory interplay between the language of the policy provisions, a provision of the Federal Crop Insurance Act, and a Final Agency Determination issued by the RMA to assert that a statute of limitations bars Plaintiffs' claims.  In addition, Defendants raise several arguments with respect to Timothy's alleged failure to comply with policy provisions and alleged deficiencies in his state law claims.  As the Court finds Defendants are entitled to summary judgment on the grounds of collateral estoppel, it is not necessary to address Defendants' remaining arguments.

7

discovery process and had an opportunity to fully litigate the merits of this issue, which was the determinative issue in the arbitration decision [*id.* at PageID#: 791-92].

Plaintiffs argue that collateral estoppel should not apply because the arbitration was not, in fact, a full and fair opportunity to litigate the merits of all the claims presented in the instant case [Doc. 92 at PageID#: 1587-88]. Specifically, because the arbitration award concerns a factual determination only as to the insurable interest issue and states that no other factual determinations are made as to other issues, Plaintiffs argue there are claims that were not fully evaluated in arbitration and thus cannot be barred by collateral estoppel [*id.*]. Plaintiffs also argue that the policy provisions, by contemplating legal action after arbitration, suggest that they are not barred from further litigation and that the arbitration award is not binding [*id.* at 1589-90].

### 1. The Policy

The parties have stipulated that the 2004 policy provisions are applicable and govern the parties' claims [Doc. 78 at PageID#: 621-22].[7] The 2004 provisions, which are largely devoid of terms concerning the effect of arbitration, state in relevant part as follows:

20. Arbitration, Appeals, and Administrative Review.

(a) If you and we fail to agree on any factual determination made by us, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Disputes regarding the amount of assigned production for uninsured causes for your failure to use good farming practices must be resolved under this subsection.

(b) Except as provided in section 20(d), you may appeal any determination made by FCIC in accordance with appeal

---

[7] During briefing on Defendants' motion to dismiss and prior to the above-referenced stipulation, Plaintiffs advanced the 2005 policy provisions as those applicable to the 2004 crop year, while Defendants maintained the 2004 policy provisions applied.

provisions published at 7 CFR part 400, subpart J or 7 CFR part 11.

(c)    No award determined by arbitration, appeal, administrative review or reconsideration process can exceed the amount of liability established or which should have been established under the policy.
. . .

25.  Legal Action Against Us.

(a)  You may not bring legal action against us unless you have complied with all of the policy provisions.

(b)  If you do take legal action against us, you must do so within 12 months of the date of denial of the claim.  Suit must be brought in accordance with the provisions of 7 U.S.C. § 1508(j).

(c)  Your right to recover damages (compensatory, punitive, or other), attorney's fees, or other charges is limited or excluded by this contract or by Federal Regulations.

[Doc. 18-2 at PageID#: 110-11].

## 2.    The Federal Arbitration Act

To address the parties' argument regarding collateral estoppel, and in the absence of further guidance about arbitration in the applicable policy provisions,[8] the Court will also look to the Federal Arbitration Act ("FAA"), which applies to arbitration awards in crop insurance cases.  *See Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1302 (M.D. Fla. 2010) (noting the FAA applies to contracts affecting interstate commerce and citing cases finding the FAA applies to crop insurance contracts), *Svancara v. Rain and Hail, LLC*, No. 8:09CV144, 2009 WL 2982906, at *3 (D. Neb.

---

[8]  The 2005 policy provisions include the following statement: "Any decision rendered in arbitration is binding on you and us unless judicial review is sought in accordance with section 20(b)(3).  Notwithstanding any provision in the rules of the AAA, you and we have the right to judicial review of any decision rendered in arbitration" [Doc. 26-12 at PageID#: 324 (¶ 20(c))].

9

Sept. 11, 2009) ("I conclude that a crop insurance policy, reinsured by a federal agency, 'involves interstate commerce'"), *In re 2000 Sugar Beet Crop Ins. Litig.*, 228 F. Supp. 2d 992, 997 (D. Minn. 2002) ("[T]he FAA and other federal laws are applicable" to crop insurance policies), *Nobles v. Rural Cmty. Ins. Servs.*, 122 F. Supp. 2d 1290, 1299-1300 (M.D. Ala. 2000).

The FAA provides the parties may apply to the court for a confirmation of the award within one year of the award (9 U.S.C. § 9), the award may be vacated for various grounds (9 U.S.C. § 10), and a court may modify or correct an arbitration award (9 U.S.C. § 11). Although the FAA itself does not explicitly address a court's standard of review when faced with a lawsuit addressing an arbitration award, the United States Court of Appeals for the Sixth Circuit has indicated that the FAA "'expresses a presumption that arbitration awards will be confirmed . . . . When courts are called on to review an arbitrator's decision, the review is very narrow; it is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Uhi v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 305 (6th Cir. 2008) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005)).

### 3.      The Arbitration

A preliminary hearing was held in the arbitration process on May 15, 2007, resulting in the issuance of a scheduling order to govern a period of time through September 4, 2007, for the parties to conduct discovery [Doc. 84-1 at PageID#: 1097-98]. This original discovery deadline appears to have been changed later, as the parties engaged in written discovery in November and December 2007 [*id.* at PageID#: 1102-03, 1106-11]. Farmers Crop Insurance submitted its pre-hearing brief on June 6, 2008, in which it made several arguments, including an argument that Timothy had no insurable share in the crop [*id.* at PageID#: 1123-37].

10

A three-day arbitration hearing commenced on June 18, 2008 to address the claims asserted by Timothy as they relate to this case and to address the claims of Travis Wanamaker as they relate to Civil Case No. 4:09-cv-78 [Doc. 84 at PageID#: 1092-93]. The parties have filed various portions of the transcript of the arbitration hearing, and the transcript spans some three volumes and several hundred pages [Doc. 78-1 at PageID#: 652-56; Doc. 84 at PageID#: 1092-93]. Timothy represented himself *pro se* during the arbitration hearing [Doc. 84 at PageID#: 1093]. After the arbitration hearing, Farmers Crop Insurance submitted a list of issues requiring factual determination to the arbitration panel, including the issue of whether Timothy had a 100% share in the Scruggs Farm crop [Doc. 84-1 at PageID#: 1139-42].

The arbitration award, signed on August 6, 2008, states, in relevant part:

> The Claimant has not established that he had an insurable share or interest in the crop that was damaged. He has a deed that shows that he owns the land where the crop was planted. Other than that, he does not have any documentation that he had an insurable share in the crop. He has no records of any expenses for growing nursery crop on the lane, nor does he have any records of any sales from crops grown on the land.
>
> He did not report any loss or income from the nursery operation on his 2004 and 2005 federal income tax returns. He was during those years paid an annual wage by[] Wanamaker Nursery, Inc., a family-owned corporation in which he is a shareholder. The only catalog he can produce is one from the corporation.
>
> The Claimant testified about his relationship with an entity known as "Tennessee Bush Farm." The precise nature of that relationship is unclear. The Claimant has no records that document his relationship with that entity. Apparently, Tennessee Bush Farm also claims an interest in the crop as well, for according to Claimant, it sold stock from the Claimant's land.
>
> Because the Claimant has not established an insurable share in the crop, the policy is voided. Having made this factual determination, it is not necessary to make any additional factual

11

determinations.

[Doc. 82-25 at PageID#: 968-75; Doc. 84-1 at PageID#: 1149-56].

### 4. Collateral Estoppel Factors

The Defendants primarily couch their argument regarding the effect of the arbitration in terms of collateral estoppel, as opposed to arguing for deference to the award pursuant to the FAA. Because the prior proceeding was an arbitration subject to the FAA, the Court will look to federal law for the applicable collateral estoppel factors.[9] Generally, collateral estoppel "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tenn. Dept. of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009). There are four factors the party asserting collateral estoppel must establish: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and

---

[9] When subject matter jurisdiction is based on diversity of citizenship, as here, it is unclear whether state or federal collateral estoppel factors should apply to a case where the prior proceeding is an arbitration under the FAA. If the prior proceeding had occurred in federal court, then it is generally recognized that federal collateral estoppel factors should apply even when the case is before the court based on diversity jurisdiction. *See J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213-14 (6th Cir. 1996) (deciding "whether in a federal diversity action, federal or state law governs the preclusive effect of a prior federal diversity judgment" and determining that federal law, not state law, should apply); *In re Air Crash at Detroit Metro. Airport, Detroit, Mich. on August 16, 1987*, 776 F. Supp. 316, 319-24 (E.D. Mich. 1991) (discussing at length and concluding that federal collateral estoppel factors should apply when analyzing the effect of a federal court judgment). It is also recognized that if the prior proceeding took place in state court and the federal court has diversity jurisdiction, then state law collateral estoppel factors generally apply. *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 849-50 (6th Cir. 2006). The parties did not address whether state or federal collateral estoppel factors should apply herein.

fair opportunity to litigate the issue in the prior proceeding." *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003).[10] The Court will address these factors in turn.

### a. The same issues were decided and necessary to the outcome

The first two factors address the question of whether the issues raised and litigated in the prior proceeding were the same and if the issues decided were necessary to the outcome of the arbitration. Plaintiffs argue that the issues in the arbitration were not the same as the issues raised herein because the arbitrators made only one factual determination and declined to address any other issues. Plaintiffs argue that their ability to file suit allows for *de novo* review of all claims and issues raised rather than an appeal of the arbitrators' sole factual determination.

Contrary to Plaintiffs' argument, once the arbitrators decided a threshold issue that resulted in the voidance of the crop insurance policy, it was not necessary for the arbitrators to address all other issues raised in the arbitration proceedings.[11] The issues raised here appear to be the same as the issues raised in the arbitration, and it is within this context that the Court must address the collateral estoppel argument to determine if Plaintiffs are permitted to assert the same claims a second time. Significantly, the threshold issue of Timothy's insurable interest was decided in the

---

[10] As a functional matter, the collateral estoppel analysis is essentially the same under either state or federal law. *See Mullins v. State of Tennessee*, 294 S.W.3d 529, 535 (Tenn. 2009) (stating the factors as follows: "(1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.").

[11] Similarly, here the Court has determined that it is not necessary to address each argument raised by the parties as the Court finds Defendants are entitled to summary judgment on the grounds of collateral estoppel.

13

arbitration. Plaintiffs clarified at oral argument that they do not dispute that the threshold insurable interest issue was adequately addressed during arbitration, and clearly this issue was necessary to the outcome of the arbitration. As such, the Court finds that these two factors weigh in favor of the application of collateral estoppel to bar Plaintiffs from relitigating here the same insurable interest issue decided in the arbitration.

### b.    The prior proceeding resulted in a final judgment

Turning to the third factor, whether the prior proceeding resulted in a final judgment, arbitration proceedings have the same effect as judicial decisions and qualify as a prior proceeding for purposes of collateral estoppel. *See Turpin v. Love*, 1973 WL 16997, at *4 (Tenn. Ct. App. Aug. 14, 1973); *Bright v. Spaghetti Warehouse, Inc.*, No. 03A01-9708-CV-00377, 1998 WL 205757 (Tenn. Ct. App. Apr. 29, 1998) (applying collateral estoppel when prior proceeding was an arbitration); *see also Foster v. Windsor Republic Door, Inc.*, No. 1:10-cv-01081-egb, 2010 WL 6512343 (W.D. Tenn. Oct. 21, 2010); *Cincinnati Ins. Cos. v. Tennessee Log Homes, Inc.*, No. 1:05-CV-7, 2008 WL 2944914, at *6-7 (E.D. Tenn. July 25, 2008). No party has alleged that the arbitration award was not a final judgment on the merits, and this factor also weighs in favor of finding that collateral estoppel applies to bar Plaintiffs from relitigating herein the same issue decided in the arbitration.

### c.    The parties had a full and fair opportunity to litigate the issue

As for the final factor, the Court must determine whether the party against whom estoppel is sought had a full and fair opportunity to litigate the insurable interest issue. The parties were heard on this factor at length during oral argument on the pending motions. Defendants argued that Timothy was extensively involved in the arbitration process; that even representing himself *pro se*,

14

he had a full and fair opportunity to litigate all claims and brief the issues both before and after the hearing; that Timothy could have challenged the arbitration decision if he believed the arbitrators erred in some way, but he did not attempt to vacate the award; that the factual determination made by the arbitrators is binding; and that the arbitrators addressed all the issues presented regardless of whether they explicitly addressed the issues in the award, as the award states it resolved all claims. Plaintiffs essentially argued once more that because the arbitrators did not make factual determinations as to all issues raised, Plaintiffs should have the opportunity for judicial review of those additional issues. Plaintiffs further argued that although the insurable interest issue was adequately litigated and addressed at arbitration, it was the first time the denial of Timothy's claim was based on that issue.

The record now contains a wealth of information on the subject of whether the arbitration was a full and fair opportunity to address the merits of the claims asserted in this matter.[12] The parties conducted discovery in the arbitration process and from the excerpts of the transcript before the Court, it appears the arbitration hearing fully addressed at least the following: an investigation into catalogs submitted by insurance agent Richard Mackie (the ground upon which Timothy's insurance claim was denied) [Doc. 78-1 at PageID#: 674-80, 683-84, 734-35]; Timothy's

---

[12] Defendants originally raised a collateral estoppel argument in a previously filed motion to dismiss, which the Court treated as a motion for summary judgment under Fed. R. Civ. P. 12(d) [Docs. 17, 44]. At the time the motion was denied, the Court had before it limited and disputed information. For example, the relationship between the Plaintiffs and the extent of the arbitration proceeding was unclear and the Court was not fully informed about the extent of discovery in the arbitration process. From the face of the arbitration award (one of the few relevant documents concerning the arbitration in the record at the time), it was not apparent whether the parties were the same, whether the issues presented were the same, or whether there was a sufficient opportunity to litigate the merits of the issues presented. The Court now has sufficient and undisputed facts to address the collateral estoppel argument.

procurement of the Scruggs Farm crop which he attempted to insure for the 2005 crop year, his arrangements with Tennessee Bush Farm, Inc. and Wanamaker Nursery, Inc., his attempts to put together a catalog for his application, his receipt of the policy documents, and the thirty-day period within which the insurance company should notify the insured of problems [*id.* at PageID#: 681-82, 729-35]; basic information about the requirements to attach insurance coverage and the recordkeeping requirements [*id.* at PageID#: 692-96, 707-20, 728, 760-65], the zero prior year's sales issue, the possible necessity for a waiver on that issue, and the inspection of Timothy's farm before the policy was issued [*id.* at PageID#: 735-45, 750-56]; the acceptance of Timothy's application and catalogs and the subsequent catalog concern [*id.* at PageID#: 746-49]; whether the insurance company has a duty to investigate the information on the application and the general purpose of the inspection [*id.* at PageID#: 750-52]; and the RMA's interpretation of an insurable share in the crop and the effect of that share on the loss [*id.* at 692-95, 755-58].

Timothy is a Plaintiff in this lawsuit and was a key participant in and party to the arbitration. Timothy is also the named insured. As such, it was his insurable interest, if any, and his compliance with the insurance policy provisions at stake to determine if coverage existed. Scruggs Farm Nursery is merely a trade name, not a corporation or other legal entity, and there was no need for the arbitration to include the trade name as a party, as the insurance policy affecting the nursery crop was not in the farm's name. Because Scruggs Farm Nursery is merely a trade name and not a legal entity, any concerns about privity are not applicable. As for Wanamaker Nursery, Inc., this entity would not have any basis for participating in the arbitration, as it was not a party to the insurance policy at issue, and the parties have stipulated in this action that Wanamaker Nursery, Inc. had an insurance policy that did not include the nursery crops at Scruggs Farm, and Wanamaker Nursery,

Inc. made no insurance claims for the 2005 crop year that are at issue in this case [Doc. 78 at PageID#: 632, 637]. Thus, its participation in this lawsuit does not alter the Court's conclusion that the parties against whom estoppel is sought are the same.

After reviewing the evidence and considering the arguments, the Court finds the arbitration provided the parties against whom estoppel is sought with a full and fair opportunity to address the issues raised, specifically the issue of whether Timothy had an insurable share in the crops. The arbitration process and hearing were quite extensive and fully addressed the facts and legal issues related to Timothy's policy and subsequent insurance claim. During the three-day arbitration hearing, Timothy represented himself *pro se*, but the parties clarified at oral argument that he had counsel prior to the arbitration hearing, and it does not appear from the arbitration transcripts that Timothy was unable to effectively represent himself. Timothy testified on his own behalf and other witnesses were questioned quite extensively by both sides; furthermore, the hearing covered in great depth all of the issues surrounding the denial of Timothy's claim. As Defendants point out, Timothy has never made any allegation that the award was subject to vacation due to any error by the arbitrators. Moreover, although Plaintiffs argue the issues are not the same because the arbitrators did not decide issues beyond the threshold and determinative issue of whether the policy was void, there was no need for the arbitrators to address any other issue once they decided a threshold issue that disposed of the need to make further factual determinations. Thus, the final factor also weighs heavily in favor of baring Plaintiffs from relitigating their claim that Timothy had an insurable interest here.

Accordingly, the Court finds, as a matter of law under the undisputed facts, that collateral estoppel bars Plaintiffs from relitigating in this Court the threshold issue determined in the

arbitration: that Timothy did not have an insurable share or interest in the crops resulting in the voidance of his crop insurance policy. Accordingly, Defendants are entitled to summary judgment.

### B.        Plaintiffs' Motion

Although the Court has determined that Defendants are entitled to summary judgment on collateral estoppel grounds, there is one remaining argument asserted in Plaintiffs' motion the Court must consider, as it might survive the determination that the policy was properly voided. While Plaintiffs agreed at oral argument that none of the state law claims asserted against any of the Defendants in the Complaint would survive a determination that the policy was properly voided, in Plaintiffs' brief, they argue that Defendants should be estopped from voiding coverage because they accepted Timothy's insurance application without identifying any problems [Doc. 82 at PageID#: 825]. Plaintiffs assert that it was Defendants' agent, Richard Mackie, who guided them through the application process and that Defendants are bound by Mackie's actions and advice [*id.* at PageID#: 826].

Defendants argue that Timothy is deemed to know the policy terms and cannot establish, as a matter of law, that he relied upon an insurance agent's instructions that would essentially waive terms of the insurance policy [Doc. 89 at PageID#: 1436-39]. Defendants further argue that Richard Mackie did not have actual or apparent authority to bind the insurance company by making statements in contravention of the policy terms and federal crop insurance program procedures, and that Plaintiffs therefore acted unreasonably in their reliance [*id.* at PageID#: 1439-42].

To address the issue of estoppel as it relates to Defendants, the Court must first address the issue of estoppel as it relates to the previously dismissed federal agencies (the FCIC, the RMA, or the USDA). Pursuant to *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947), there is no estoppel

18

against such federal governmental agencies in a case involving crop insurance policies. In *Merrill*, the plaintiff was told by an agent of the FCIC that he could insure the entire crop of spring wheat planted when, in fact, he could not insure the acres planted on reseeded winter wheat. *Id.* at 382. The plaintiff discovered the agent erred when a drought destroyed most of the crop and he unsuccessfully attempted to collect on the loss. *Id.* The United States Supreme Court held that the insurance regulations were binding on all who sought insurance under the FCIA regardless of actual knowledge, noting the duty of the courts "to observe the conditions defined by Congress for charging the public treasury" and uphold the terms and conditions imposed by Congress to create government liability for crop insurance policies. *Id.* at 385.

The principles outlined in *Merrill* have been employed to prevent litigants from asserting estoppel arguments against the government in a variety of factual scenarios, and it is generally settled that the United States cannot be estopped by acts of its individual officers or agents. *See Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990); *United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1108 (6th Cir. 1984). The reasoning for the prohibition against estoppel stems from a "concern that government agents. . . by their statement or conduct might waive or revise the laws as enacted by Congress. . . [and] might . . . give away assets or funds that the government holds for the public good under congressional mandate." *Housing Authority of Elliott Cnty. v. Bergland*, 749 F.2d 1184, 1190 (6th Cir. 1984). Courts have acknowledged, however, that estoppel might arise in circumstances involving "affirmative misconduct" by the government. *River Coal*, 748 F.2d at 1108; *Rogers v. Tenn. Valley Authority*, 692 F.2d 35, 37-38 (6th Cir. 1982).

In the instant case, the insurance agent alleged to have inadequately guided Plaintiffs through the insurance process was an agent of Defendants, not the federal agencies. This agent's alleged

19

failures in the application process would not fall under any exception for affirmative misconduct because he was not a government agent and, as recognized in *Merrill*, Plaintiffs are charged with knowledge of the applicable regulations when dealing with the government (and a government sponsored program such as crop insurance). The federal entities, therefore, cannot be estopped and, as earlier noted, they were previously dismissed from this action.

In the context of federally reinsured crop insurance policies, courts have generally held that the private insurance company is still protected by the general prohibition against estoppel that applies to the federal government because "[t]he statements of an insurance company employee cannot be applied to extend coverage where there is none because the doctrine of estoppel cannot extend coverage beyond that authorized by the policy." *William J. Mouren Farming, Inc. v. Great Am. Ins. Co.*, No. CV F 05-0031 AWI LJO, 2005 WL 2064129, at *10 (E.D. Cal. 2005) (citing *Mann v. FCIC*, 710 F.2d 144, 147 (4th Cir. 1983)). In *Walpole v. Great Am. Ins. Co.*, 914 F. Supp. 1283 (D.S.C. 1994), the court addressed the very question of whether the prohibition against estoppel outlined in *Merrill* would apply to reinsured policies (and private insurance companies) as well as FCIC-issued policies, and the court determined that the statements at issue, although made by defendant insurance company's adjuster, could not extend coverage where coverage did not exist because of the estoppel doctrine, thereby adopting the *Merrill* principles as applicable to the private insurance company defendant. *Id.* at 1290 (citing *Mann v. FCIC*, 710 F.2d 144, 147 (4th Cir. 1983)).

As to the crop insurance policy at issue, then, if the policy was properly voided, Defendants cannot be estopped from denying coverage based on any reliance by Plaintiffs on Defendants' confirmation that insurance attached. As the Court has determined that collateral estoppel bars the

Plaintiffs from relitigating the arbitrators' decision that Timothy had no insurable interest or share in the crop thus voiding the policy, Defendants cannot be estopped from denying coverage. Therefore, no claims remain against any of the Defendants in this action.

## IV.    CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment [Doc. 80] is **GRANTED**, Plaintiffs' motion for summary judgment [Doc. 79] is **DENIED,** and Great American's separate motion for summary judgment [Doc. 85] is **DENIED AS MOOT**. There being no other issues in this case, the Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED.

ENTER:


s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE